UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROBERT KORDISH,

                    Petitioner,

                                                                    **MEMORANDUM & ORDER**

          -against-

                                                                    16 CV 6757 (RJD)

SUPERINTENDENT DANIEL F.
MARTUSCELLO, et al.,

                    Respondents.
-------------------------------------------------------x
DEARIE, District Judge.

          Before the Court is the application of Petitioner Robert Kordish for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Kordish claims that he was denied his Sixth Amendment

right to a public trial when the trial court closed the courtroom during the testimony of two

undercover agents.  For the reasons set forth below, the application is denied and the petition is

dismissed.

## BACKGROUND

          In 1991, Kordish, then 22 years old, was charged with the criminal sale of a controlled

substance in the third degree after selling 21 grains of cocaine to Undercover Police Officer

("UC")  31365, for sixty dollars.  ECF 10-1 at 34, 86.  At the time, Kordish was on probation for

a prior conviction of the same offense. Id.

          Kordish appeared with counsel at a pre-trial proceeding in Supreme Court, Queens

County, on April 16, 1992 and consented to a bench trial.  ECF 10-2 at 4.  At the close of that

proceeding, Kordish acknowledged that he understood the trial court's Parker admonition.[1]  Id. at

_____

[1] See People v Parker, 57 N.Y.2d 136 (1982) (advising defendant of the right to be present and
that the consequences of nonappearance could be trial in absentia).

14.  On the first day of trial ten days later, Kordish was absent.  Id. at 16. His attorney told the

court that he had spoken to his client the night before but did not know his whereabouts.  Id. at

17.  At a Parker hearing the following day, an officer testified that he was unable to locate

Kordish after telephoning local hospitals, morgues, and jails.  Id. at 20-23.  The officer also

telephoned the home of Kordish's codefendant, where the woman who answered the call

reported that she had seen Kordish the night before in the neighborhood.  Id. at 22.  Over defense

counsel's objection, the court found that the state had met the "bare minimal requirement" to

show that Kordish had freely and voluntarily absented himself and granted the state's motion to

try Kordish in absentia.  Id. at 32-33 (cleaned up).

At the start of trial, the prosecution moved to close the courtroom during the testimony of

UC 31365.  During the ensuing Hinton hearing,[2] UC 31365 testified that he had been working in

an undercover capacity for five years; had more than ten other cases pending in Queens County

at that time; was due to testify before the grand jury in approximately ten matters; and had

several other "open" matters.  Id. at 40-42.  UC 31365 further testified that at least five "lost

subjects" were still at large,[3] and that for all these reasons, he believed exposure of his identity to

the local community through open-court testimony would compromise his ability to perform his

essential job function and jeopardize his personal safety.  Id. at 42.  Over defense counsel's

objection, id. at 43, the court granted the motion to seal, as follows:

> I find there are compelling reasons by the officer [sic], because he is actively
> engaged in undercover activity for the New York City Police Department in the
> nature of narcotics investigations and he has a number of open cases pending,

---

[2] People v. Hinton, 31 N.Y.2d 71 (1972) (holding the exclusion of the public during undercover
agent testimony did not violate defendant's right to a public trial because it was necessary to
safeguard the testifying agent's life if his identity were exposed).

[3] Lost subjects are persons who sold narcotics to an undercover but have not yet been
apprehended.

both in the grand jury and in the trial court.  And also, his safety could be compromised if individuals might see him in this courtroom and in this courthouse and its environs.  Accordingly . . . [t]he courtroom when UC 31365 testifies will be sealed.

Id. at 44-45.

At a later point in the trial, the prosecution again moved to close the courtroom, this time for the testimony of UC 2780, the "ghost" undercover whose principal role was to protect UC 31365.  Id. at 149.  At the second Hinton hearing, UC 2780 testified that he had been working in undercover operations for the New York City Police Department for approximately four years; that he was actively involved in several matters pending in Queens County; that he was expected to testify before the grand jury in approximately five matters; that he has approximately 20 lost subjects; and that that he feared exposure of his identify as an undercover officer would jeopardize his safety.  Id. at 149-152.  Defense counsel did not cross-examine or object, and the court granted the closure application, as follows: "The court finds because of the potential safety of the officer involved, the courtroom should be closed during the course of his testimony, based upon the facts as testified to by the officer."  Id. at 152.

Upon his conviction, Kordish was sentenced in absentia as a second felony offender to an indeterminate term of imprisonment of 8 to 16 years. On direct appeal, Kordish fully presented his claim that the sealing of the courtroom during the testimony of the two undercover officers denied him his Sixth Amendment right to a public trial.  The Appellate Division, unanimously affirming Kordish's conviction, held that the public trial claim was "unpreserved for appellate review and, in any without merit."  People v. Kordish, 140 A.D.3d 981, 982 (2d Dep't 2016) (cleaned up), lv. app. denied, 28 N.Y.3d 1029 (2016).  The panel also held that the evidence was "legally sufficient to disprove [Kordish's] claim that he was acting as an agent of the undercover

3

officer in the narcotics transaction," and that "the verdict was not against the weight of the evidence." Kordish, 140 A.D.3d at 982.

In a portion of the decision to which one justice dissented at considerable length, the appellate court reduced Kordish's sentence from the indeterminate term of 8 to 16 years to an indeterminate term of 5 to 10 years. Id. Noting (i) that the drug offense involved "a relatively small amount of cocaine for the sum of $60" and no violence; (ii) the probation department's finding that "the then-22-year-old defendant had a $100 per day drug addiction"; and (iii) the fact that the prosecution had recommended a lower sentence than what was imposed, the court concluded that, "even considering that [Kordish] absconded, the sentence of 8 to 16 years imprisonment was unduly harsh and severe." Id. at 983.[4]

## GENERAL HABEAS STANDARDS

Federal habeas relief is authorized "only on the ground that [an individual] is in custody in violation of the Constitution or laws or treaties of the United States." 28 USC § 2254(a). The habeas statute further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determine by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

> A state court adjudication is "contrary to" Supreme Court precedent if it contradicts the governing Supreme Court law or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and

---

[4] Kordish's release from custody in December 2016, see https://nysdoccs.lookup no. 12-R-1169, does not render the petition moot. See generally Spencer v. Kemna, 523 U.S. 1, 8 (1998) (even after a petitioner's release, a wrongful conviction is presumed to have collateral consequences).

nevertheless arrives at a result different from Supreme Court precedent. An unreasonable application of federal law occurs when a state court identifies the correct governing legal principle but unreasonably applies it to the facts of a petitioner's case.

Krivoi v, Chappius, 2022 WL 17481816, 1 (2d Cir. Dec. 7, 2022) (summarizing Supreme Court precedent) (cleaned up). "Clearly established federal law" refers only to the holdings of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 412 (2000). "No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70 (2006)).

As the Supreme Court has consistently emphasized, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410 (emphases in original); Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting same language from Williams). As a result, habeas relief is available only when the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (cleaned up). Additionally, "[t]he more general the Supreme Court rule, the more leeway state courts have in reaching outcomes in case-by-case determinations." Richter, 562 U.S. at 101 (cleaned up).

## DISCUSSION

As noted, while defense counsel clearly objected to closure for the first undercover's testimony, he did not renew his objection when the closure was ordered for the second undercover, and the Appellate Division held that the public trial claim was unpreserved.

Respondent therefore argues that the public trial claim is barred from consideration here by the

independent and adequate state law doctrine. See generally Lee v. Kemna, 534 U.S. 362, 375

(2002) ("This Court will not take up a question of federal law presented in a case "if the decision

of the state court rests on a state law ground that is independent of the federal question and

adequate to support the judgment") (cleaned up).  The federal habeas court, of course, remains

the final arbiter of the applicability of that doctrine.  See Lee, 534 U.S. at 375 ("the adequacy of

state procedural bars to the assertion of federal questions is not within the State's prerogative

finally to decide; rather, adequacy is itself a federal question.") (cleaned up).

The Court declines to probe or parse the Appellate Division's preservation ruling or

otherwise reach the procedural issue here, however, because even assuming arguendo the

absence of any procedural defect, Kordish's public trial claim unquestionably fails on the merits

as a basis for habeas relief.

The controlling Supreme Court authority is Waller v. Georgia, 467 U.S. 45 (1984).  See

Presley v. Georgia, 558 U.S. 209, 213 (2010) (reaffirming that "Waller provided standards for

courts to apply before excluding the public from any stage of a criminal trial").  Waller

recognizes that "the right to an open trial may give way in certain cases to other rights or

interests such as . . . the government's interest in inhibiting disclosure of sensitive information."

467 U.S. at 45.  Under Waller,

> the party seeking to close the hearing must advance an overriding interest that is
> likely to be prejudiced, the closure must be no broader than necessary to protect
> that interest, the trial court must consider reasonable alternatives to closing the
> proceeding, and it must make findings adequate to support the closure.

Id. at 48.

The Appellate Division's rejection of Kordish's public trial claim is not an unreasonable

application of Waller.  Indeed, it was eminently sound to conclude that the trial court's closure

findings satisfy the <u>Waller</u> test:  the overriding interest in preserving the anonymity of law enforcement officers working in an undercover capacity speaks for itself (without it, as they testified here, they could not carry out their essential functions and their safety would be in jeopardy); the closure ordered here was no broader than necessary to protect that interest because it extended *only* to the testimony of the two undercovers; and the trial court's findings are supported by the officers' testimony that they were actively engaged in other undercover activity at that time and that the existence of numerous lost subjects posed an ongoing threat to their safety.  Finally, it was not an unreasonable application of <u>Waller</u> for the Appellate Division to conclude that no practical alternative to the limited closure was feasible. <u>See</u> <u>Waller</u>, 476 U.S. at 48. <u>See</u> <u>also</u> <u>Rodriguez</u>, 537 F.3d at 110 (Appellate Division did not unreasonably apply <u>Waller</u> when denying public trial challenge to closure for undercover officer testimony because, inter alia, "it is clear that the state has an overriding interest in protecting the identify of its undercover offices") (cleaned up).

### CONCLUSION

For all of the foregoing reasons, the application of Petitioner Robert Kordish for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.  Because Kordish has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), no certificate of appealability will issue.

SO ORDERED.

Dated:  Brooklyn, New York
April  18, 2023

_____s/_____
RAYMOND J. DEARIE
United States District Judge